## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **BRAYTON POINT, LLC,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 25-cv-12554-DJC** |
| | ) | |
| **TOWN OF SOMERSET, ALLEN SMITH,** | ) | |
| **JAMISON SOUZA, and TODD COSTA,** | ) | |
| **as they are Members of the SOMERSET** | ) | |
| **BOARD OF SELECTMEN,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## MEMORANDUM AND ORDER

**CASPER, C.J.**                                                          **July 8, 2026**

### I.      Introduction

Plaintiff Brayton Point, LLC ("Brayton Point") has filed this lawsuit against Defendants

Town of Somerset ("Somerset") and Somerset Selectmen Allen Smith ("Smith"), Jamison Souza

("Souza") and Todd Costa (collectively, "Defendants") asserting claims under 42 U.S.C. § 1983

for alleged violations of procedural and substantive due process (Counts I and II) and First

Amendment retaliation (Count III), and also alleging slander of title (Count IV) and abuse of

process (Count V). D. 1. Defendants have moved to dismiss the complaint. D. 12. For the reasons

stated below, the Court DENIES the motion.

### II.      Standard of Review

#### A.      Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a

complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence."  Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)).  When considering a motion to dismiss for lack of subject matter jurisdiction, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff."  Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996).  The Court may widen its gaze and look beyond the pleadings to determine jurisdiction.  See Martínez-Rivera v. Puerto Rico, 812 F.3d 69, 74 (1st Cir. 2016).

**B.    Rule 12(b)(6)**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6),[1] the Court must determine if the facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).  To decide a Rule 12(b)(6) motion to dismiss, the Court must, reading the complaint "as a whole," conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id.  Factual allegations must be accepted as true, while conclusory legal allegations are not entitled credit.  Id.  Second, the Court must "take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief."  Schatz, 669 F.3d at 55.  If they do not, then dismissal is

_____

[1] Although Defendants cite neither provision of Rule 12, they invoke both "lack of jurisdiction," see D. 13 at 1, and "failure to state a claim upon which relief can be granted," id. at 6, in their brief.

warranted.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 11-13 (1st Cir. 2011).  The Court confines itself to and accepts as true all well-pleaded facts in the complaint, save for considering "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

## III.    Legal Background

Massachusetts law authorizes municipalities to make ordinances and bylaws that bind "all inhabitants thereof and all persons within their limits."  Mass. Gen. L. c. 40, § 21.  Typically, a municipality may impose a fine for a breach of an ordinance or bylaw, "not exceeding three hundred dollars for each offense," which "shall be recovered by indictment or on complaint before a district court."  Id.  Additionally, "[i]f the city or town has a relevant ordinance or by-law providing for noncriminal dispositions, it may use the procedures outlined in" § 21D.  Burlington Sand & Gravel, Inc. v. Town of Harvard, 31 Mass. App. Ct. 261, 265 (1991); see Mass. Gen. L. c. 40, § 21D; Maroney v. Plan. Bd., 97 Mass. App. Ct. 678, 686 (2020) (explaining that a municipality seeking to impose a penalty for violation of its zoning bylaws is "obliged to follow the procedure set forth in [§ 21D], or to pursue a criminal proceeding").

Separately, a municipality may impose a "municipal charges lien" on real property "for any local charge or fee that has not been paid by the due date," where the municipality has voted "for each type of charge or fee."  Mass. Gen. L. c. 40, § 58.  A municipal charges lien is effective when recorded in the relevant registry of deeds.  Id.  If a charge "secured by a municipal charges lien remains unpaid when the assessors are preparing a real estate tax list and warrant," the town "shall certify such charge . . . to the assessors, who shall forthwith add such charge . . . to the tax on the property to which it relates and commit it with their warrant to the collector of taxes as part of such tax."  Id.

3

## IV.     Factual Background

The Court draws the following facts from the complaint and certain exhibits to Brayton Point's motion for preliminary injunction that are sufficiently referenced in the complaint,[2] and it accepts the well-pleaded factual allegations as true for purposes of resolving the motion to dismiss.

Brayton Point is a limited liability company that owns the site of a former coal-fired power plant in Somerset.  D. 1 ¶¶ 1, 8.  On September 26, 2019, Brayton Point applied for a planned development permit from Somerset to use the site "for a scrap metal wholesale storage and transport business and a salt wholesale storage and transport business."  Id. ¶¶ 9-10.  On January 7, 2020, the Somerset Zoning Board of Appeals ("ZBA") approved the permit with conditions, including that "no dust or fumes incident to storage or handling of scrap metal" would "leave the [s]ite," in accordance with Somerset's zoning bylaw.  See id. ¶¶ 10-11 (alteration in original).

In July 2020, two residents complained to Somerset's Zoning Enforcement Officer that dust was leaving the property in violation of the permit conditions.  See id. ¶¶ 12-13.  On November 24, 2020, the ZBA issued two decisions that ordered Brayton Point to suspend operations and submit a plan to Somerset before it could resume operations.  Id. ¶ 16.  The same day, Somerset, through the Zoning Enforcement Officer, issued Brayton Point a cease-and-desist order, which stated:

> Brayton Point LLC is in violation of the Zoning Board of Appeals order to suspend operations, and therefore you are notified that a fine of $300.00 per day shall be imposed for each truck that enters 1 Brayton Point Road, Assessors Map A-2, Lot 2 that is related to scrap metal or salt operations.  Please be advised that Section 7.2

---

[2] Brayton Point submitted twenty-one exhibits in support of its motion for preliminary injunctive relief.  D. 4.  Both parties rely upon various information from that motion in their briefing here.  D. 13 at 1, 3; see D. 16 at 2 (stating that background section of such motion was incorporated by reference, and that Brayton Point "only adds pertinent additional facts to clarify allegations made by Defendants in their motion").

of the Zoning By-law provides penalties of Three Hundred Dollars ($300.00) for each day of continued violations.

Id. ¶¶ 17-18.

On December 31, 2020, Somerset, through its Building Commissioner, approved a new operations protocol and released the cease-and-desist order. Id. ¶ 19. On January 14, 2021, three residents challenged the Building Commissioner's decision. Id. ¶ 20. They were members of an organization called Save Our Brayton Point, Inc., whose president, as of January 2, 2020, was Smith. See id. ¶¶ 20-24. On February 18, 2021, the ZBA overturned the Building Commissioner's decision, and the next day, the Zoning Enforcement Officer issued a new cease-and-desist order that stated:

> As of February 19, 2021, you are ordered to suspend all activities that pertain to the moving of scrap metal and salt and any other activities related to scrap metal and salt. The operations will not be allowed to resume until the Zoning Board of Appeals lifts the cease and desist. Please be advised that Section 7.2 of the Zoning By-law provides penalties of Three Hundred Dollars ($300.00) for each Day of continued violation.

Id. ¶¶ 25-26. On March 8, 2021, the ZBA issued three decisions annulling the Building Commissioner's decision. Id. ¶ 27. The order included in the three ZBA decisions also directed Brayton Point to suspend all operations "in accordance with" the order included in the ZBA's November 24, 2020, decisions, which it declared "remains in full force and effect." See id.

Brayton Point appealed the five ZBA decisions to the Land Court, which affirmed the decisions in March 2022. Id. ¶¶ 28-29; see Brayton Point, LLC v. Cadorette, No. 20 MISC 000533 (RBF), 2022 WL 666836, at *17-20 (Mass. Land Ct. Mar. 7, 2022). The Land Court ordered Brayton Point to cease operations, Brayton Point, 2022 WL 666836, at *20, which it did on March 21, 2022, D. 1 ¶¶ 30-31.

On November 29, 2023, Somerset obtained a criminal complaint against Brayton Point. Id. ¶ 32; D. 4-9; D. 4-12; D. 4-13. The complaint charged Brayton Point with two zoning bylaw

violations for conduct on November 24, 2020, and listed the penalty for each count as "not more than $300." D. 1 ¶ 32; D. 4-9 at 2. The application for the complaint, which was signed by Souza, listed the offense dates as November 24, 2020, "& continuing." D. 4-9 at 5. Somerset filed a fourth amended complaint effective March 2025, which sought a $300 per day fine for 261 days during which Brayton Point operated in violation of the November 24, 2020 cease-and-desist order, and separately sought $300 per truck for 11,195 trucks. D. 1 ¶¶ 35-37. In that case, the parties disputed whether Somerset could impose a per-truck fine in addition to a per-day fine. Id. ¶ 44. During a hearing on March 4, 2025, during which the parties discussed the fine issue, the state court judge noted: "I've already taken Judicial Notice of the Land Court's findings. . . . And one of those findings was, the Judge found that it was a per day and not per truck violation. So, I don't need to make a finding on that. That's now established because I took judicial notice of it." D. 4-17 at 5; D. 1 ¶ 45. The matter was continued to April 7, 2025. D. 1 ¶ 47.

On April 2, 2025, Somerset recorded municipal charges liens against Brayton Point's property in the amount of $3,452,940. Id. ¶ 48; D. 4-19. On April 7, 2025, Somerset moved to dismiss the criminal complaint. D. 1 ¶ 50. The Fall River District Court heard the parties on April 28, 2025, and during the hearing the judge informed Somerset's counsel, "I have to tell you that, you know, having lived with this case for quite awhile, it does bother me that this late in the game you're moving to now nolle pros the case based upon what I think is findings that I made that were detrimental to your case." D. 4-21 at 7; D. 1 ¶ 52.

## V.    Procedural History

Brayton Point initiated this action on September 12, 2025, seeking a declaratory judgment that its constitutional rights were violated and that the municipal charges liens are void. D. 1. The same day, Brayton Point moved for preliminary injunctive relief, seeking to prevent Defendants from taking any action with respect to the recorded liens, including committing the liens to Brayton

Point's fiscal year 2026 real estate tax bill on or around November 1, 2025.  D. 3 at 1; see D. 4 at 7.  On October 16, 2025, after considering Brayton Point's preliminary injunction motion and having received no opposition from Defendants, the Court entered an order enjoining Defendants from taking any action with respect to the recorded liens until the Court resolved Defendants' motion to dismiss.  D. 14.  The Court heard the parties on Defendants' pending motion to dismiss, D. 12, and took the matter under advisement.  D. 18.

## VI.    Discussion

Defendants first argue that the Court should dismiss the complaint for lack of jurisdiction because state law provides an administrative remedy for those aggrieved by municipal charges liens.  See D. 13 at 3-4.  In support of this argument, Defendants point the Court to an exhibit to their brief, which appears to be a copy of a Massachusetts Department of Revenue webpage.  Id. at 9-12.  Second, Defendants separately contend that Brayton Point's civil rights claims should be dismissed on ripeness grounds for similar reasons.  Id. at 4.

With respect to the first argument, Defendants paint it as jurisdictional but offer "limited argument" to support that position under Massachusetts law.  See Haney as Tr. of Gooseberry Island Tr. v. Town of Mashpee, 70 F.4th 12, 20-21 (1st Cir. 2023) (declining to adopt appellant's interpretation of significance of town board's variance decisions under state law).  The Department of Revenue webpage Defendants provide does not clarify their argument, as the webpage merely advises that aggrieved taxpayers who "think there is an error or partial error for any of [certain] charges," including municipal charges liens, "can file an application for an abatement with the board or department which imposed the charge just as is done for water and sewer bills as discussed in G.L. c. 40, § 42E and c. 83, § 16E, respectively."  D. 13 at 11.  The referenced statutes only address the administrative process for water and sewer charges, Mass. Gen. L. c. 40, §§ 42A, 42E; c. 83, §§ 16A, 16E, and do not answer whether there is an exhaustion requirement for municipal

charges liens.  Further, the municipal charges lien does not appear to be subject to a similar statutory exhaustion framework, c. 40, § 58, and Defendants have not pointed the Court to any authority suggesting otherwise.  The Court also notes that the municipal charges liens here have not yet been committed as a tax.  Cf. Forster v. Town of Belmont, No. 08-ADMS-10029, 2008 WL 5413378, at *3 n.3 (Mass. App. Div. Dec. 17, 2008) (affirming summary judgment for failure to exhaust remedies for disputed water and sewer charges and noting that "[o]nce committed as a tax, the water charges became subject to the [statutory] abatement procedure"); Gallo v. Div. of Water Pollution Control, 374 Mass. 278, 287-88 (1978) (suggesting that plaintiff "may have been able to challenge the validity of [a sewer] assessment in a suit for declaratory relief brought prior to the commitment of the assessment to the tax collector" but noting that because assessment was committed to tax collector for collection, the "only avenue of relief [was] with the administrative remedies provided by [statute], by way of a petition for abatement").

Moreover, Defendants' motion is premised on the propriety of the process that resulted in the municipal charges liens, which is precisely what Brayton Point challenges here.  See D. 1. That is, the state remedies referenced by Defendants are only relevant if Defendants validly imposed municipal charges liens on Brayton Point's property; if, instead, Defendants were required to follow the procedures of Mass. Gen. L. c. 40, §§ 21, 21D, and did not, any abatement-related exhaustion requirements appear inapplicable.[3]

---

[3] Neither party addresses the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341; see Cumberland Farms, Inc. v. Tax Assessor, State of Me., 116 F.3d 943, 945 (1st Cir. 1997) (explaining that, where applicable, TIA is "a complete bar" to maintaining suit in a federal forum). The TIA provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  Notably, the "TIA does not prevent federal courts from considering, for instance, a challenge to a purported state 'tax' that is in reality a punitive fee." Chamber of Com. of U.S. v. Lierman, 90 F.4th 679, 684 (4th Cir. 2024).  Although this Court "must take pains to act only within the margins of [its] jurisdiction," Cumberland Farms, 116 F.3d

With respect to Defendants' other argument, that Brayton Point's "federal civil rights claims are also not ripe for adjudication unless and until it exhausts state administrative remedies," D. 13 at 4,[4] as Brayton Point highlights, see D. 16 at 3, exhaustion of state administrative remedies is typically not required where a plaintiff asserts a § 1983 claim in federal court for alleged constitutional violations. See Martínez-Rivera, 812 F.3d at 74 (concluding that plaintiff was not required to administratively exhaust § 1983 claim for political discrimination); Powell v. Holmes, No. 17-cv-10776-FDS, 2018 WL 662482, at *4 (D. Mass. Feb. 1, 2018) (explaining that "[l]itigants are generally not required to exhaust potential state remedies before filing a § 1983 action in federal court"); Jadlowe v. Town of Dartmouth, No. 05-cv-10516-LTS, 2006 WL 8458383, at *4 (D. Mass. Mar. 3, 2006) (rejecting exhaustion argument because "administrative exhaustion is not a prerequisite for § 1983 actions"); cf. CBDE Pub. Schs. v. Mass. Bureau of Special Educ. Appeals, No. 11-10874-DPW, 2012 WL 4482296, at *6 (D. Mass. Sept. 27, 2012) (noting that exhaustion of administrative procedures under IDEA is required, even for a "§ 1983 claim based upon violations of a student's IDEA rights"); Porter v. Nussle, 534 U.S. 516, 523-25 (2002) (noting that "[o]rdinarily, plaintiffs pursuing civil rights claims under [§ 1983] need not exhaust administrative remedies before filing suit in court" but explaining that statutory exhaustion requirements are applicable to § 1983 claims by prisoners). "Indeed, the purpose of seeking a

---

at 945, the Court declines to grant Defendants' dispositive motion at this juncture based on an argument that Defendants have not made or provided any factual or legal analysis to support. See Yeomalakis v. F.D.I.C., 562 F.3d 56, 61 (1st Cir. 2009) (stating that "[i]t is not [a court's] job, especially in a counseled civil case, to create arguments for someone who has not made them or to assemble them from assorted hints and references scattered throughout the brief").

[4] At the motion hearing, contrary to Defendants' brief, D. 13 at 4, Defendants' counsel stated that this was not an exhaustion argument but was instead an argument that Brayton Point's claims were not ripe because there was no present due process violation. Whatever the potential merit of this argument, counsel did not provide any explanation or citation to further legal authority in support of same and, accordingly, the Court does not reach this issue.

federal forum is to ensure a timely and disinterested analysis of a challenge to state process." Packard v. Hinden, No. 05-11906-DPW, 2007 WL 2746799, at *4 (D. Mass. Sept. 7, 2007). The case upon which Defendants rely for their contrary argument does not support their position. See Zahra v. Town of Southold, 48 F.3d 674, 679-80 (2d Cir. 1995) (noting that federal courts should not act as zoning boards of appeal but that courts "should entertain such claims where a landowner's constitutional rights are indeed infringed by local land-use actions").[5]

## VII.    Conclusion

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss. D. 12. In light of the denial of Defendants' motion, the Court's preliminary injunction Order, D. 14, is extended until further notice of the Court.

**So Ordered.**

/s Denise J. Casper
Chief United States District Judge

---

[5] To the extent Defendants separately challenge the sufficiency of the complaint's factual allegations, see D. 13 at 6 (invoking "failure to state a claim"), Defendants have not developed any argument in this regard. Defendants' contention that "[i]t is outrageous for [Brayton Point] to come to federal court for alleged civil rights violations after causing such extreme damage to [Somerset] and its residents," id., is not a legally cognizable challenge to the plausibility of the allegations in the complaint, nor is their argument that Somerset "only [sought to impose fines] in a good faith effort to dissuade [Brayton Point] from its stubborn insistence on continuing commercial operations which it knew were causing substantial harm to a residential neighborhood," see id. at 4.

10